**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-00314-RM-NYW

DINA ABDULINA, on behalf of herself and all similarly situated persons,

      Plaintiff,

v.

EBERL'S TEMPORARY SERVICES, INC., a Colorado corporation,

      Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
REGARDING MOTION TO CERTIFY CLASS AS TO STATE LAW CLAIMS;
MOTION TO CERTIFY CLASS PURSUANT TO 29 U.S.C. § 216(b); AND
MOTION TO TOLL STATUTE OF LIMITATIONS**

---

Magistrate Judge Nina Y. Wang

      This matter is before the Court on Plaintiff Dina Abdulina's Motion for Class Certification of State Law Claims ("Motion for Class Certification") [#43, filed January 12, 2015]; Motion for Conditional Certification and Court-Authorized Notice Pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA") ("Motion for Conditional Certification") [#44, filed January 12, 2015]; and Motion to Toll the Staute [sic] of Limitations ("Motion to Toll") [#67, filed March 23, 2015]. Pursuant to the Order Referring Case dated March 24, 2015 [#68] and the memorandum dated March 24, 2015 [#69], these matters were referred to this Magistrate Judge. For the reasons addressed below, I respectfully RECOMMEND GRANTING the Motion for Conditional Certification; DENYING the Motion for Class Certification; and DENYING the Motion to Toll.

**PROCEDURAL HISTORY**

In this case, Plaintiff Dina Abdulina ("Plaintiff" or "Ms. Abdulina") seeks to pursue a class action under the FLSA on behalf of herself and other similarly situated current and former rope and harness assistants employed by Defendant Eberl's Temporary Services, Inc. ("Eberl's" or "Defendant") between February 2011 and February 2014.  Plaintiff also seeks permission to send notice and consent forms to potential plaintiffs informing that they may opt into this action should they wish to assert claims under the FLSA.  On February 4, 2014, Plaintiff filed a Complaint on behalf of herself and other allegedly similarly situated individuals seeking back pay and other damages allegedly owed under the (1) FLSA, 29 U.S.C. § 201, *et seq.*, (2) Colorado Wage Claim Act ("Wage Claim Act"), Colo. Rev. Stat. § 8-4-101, *et seq.*, and (3) Colorado Minimum Wage Act ("Minimum Wage Act"), Colo. Rev. Stat. § 8-6-101 *et seq.* [#1]. On May 5, 2014, Defendant Eberl's Temporary Services, Inc. filed a Motion to Dismiss Plaintiff's Complaint or for a more definite statement, in the alternative.  [#15].

Magistrate Judge Boland held a Scheduling Conference on May 5, 2015, at which he designated September 1, 2014 as the date by which the Parties shall complete pre-certification discovery, and September 12, 2014 as the date by which Plaintiff must file class and collective certification motions.  [#17].

On May 20, 2014, Plaintiff filed a First Amended Complaint on behalf of herself and other allegedly similarly situated individuals asserting that Defendant (1) violated the Wage Claim Act; (2) violated the FLSA; and (3) breached a contract.  [#18].  Defendant filed a Motion to Dismiss the Wage Claim Act and breach of contract claims on June 3, 2014.  [#19].

After requesting and being granted two Motions for Extension of Time to file class and

collective certification motions, Plaintiff filed the Motion to Certify and the Motion for Conditional Certification on January 12, 2015 [#43 and #44, respectively], along with a Brief in Support of both Motions [#46], and an Appendix [#45]. Plaintiff filed an Amended Appendix later the same day. [#47].

On February 3, 2015, District Judge Moore denied Defendant's first Motion to Dismiss as moot and granted Defendant's second Motion to Dismiss, thereby dismissing Plaintiff's First and Third Claims and ordering that the matter will proceed only as to Claim Two, *i.e.* the alleged FLSA violation. [#59]. Accordingly, Plaintiff's Motion for Class Certification [#43] is rendered moot. Defendant filed an Answer to the Amended Complaint on February 17, 2015 [#61], and filed its Opposition to the Motion for Conditional Certification on February 26, 2015. [#62]. Plaintiff filed her Reply in support of the Motion for Conditional Certification on March 23, 2015. [#66]. This court treats the pending Motions as dispositive for purposes of 28 U.S.C. § 636(b). *See, e.g., Giuffre v. Marts Lake Lodge, LLC,* No. 11–cv–00028–PAB–KLM, 2012 WL 5199427 n. 1 (D. Colo. Oct. 1, 2012).

## FACTUAL BACKROUND

Eberl's provides claims adjustment services to insurance companies nationwide for catastrophes, such as hurricanes, earthquakes, floods, and fires. [#46 at 2] Plaintiff was employed by Eberl's as a rope and harness assistant from July 3, 2012 through December 24, 2012. [*Id.* at 2].[1] In this capacity she assisted claims adjustors in their inspection of roofs on

---

[1] Some confusion lies as to the exact dates Plaintiff worked for Defendant as a rope and harness assistant. She states in her Brief in support of Motion for Conditional Certification that she worked as an assistant from July 3, 2012 through December 24, 2012 [#46 at 2]; yet in her signed Declaration, she attests that she worked as an assistant from December 29, 2012 through January 7, 2013 [#47 at 7, ¶ 2] and the Amended Complaint claims that Plaintiff was an

two-story homes and those with steep pitches.  Claims adjustors received compensation for each day of work, which, Plaintiff claims, incentivized their rope and harness assistants to work as many days as possible.  *Id.*  Pursuant to her contract with Eberl's, Plaintiff received $175 per day as a rope and harness assistant.  [Declaration of Dina Abdulina, #47 at 7, ¶ 3].  Plaintiff attests that during her employment with Defendant, she worked "on average" 84 hours a week.  [*Id.* at 7, ¶ 5].  Neither the contracts provided to rope and harness assistants nor Eberl's employee handbook instructed rope and harness assistants on how to report or record overtime hours worked.  [Rule 30(b)(6) Deposition of Jason Wilson as Representative of Defendant, #47 at 104-106, 73:9-75:22].

As an Eberl's employee Plaintiff participated in its per diem pay program, which allowed rope and harness assistants to elect on a weekly basis to allot a portion of their daily pay as a per diem expense reimbursement.  During the weeks Plaintiff participated in the program, Eberl's classified $163.00 of the $175.00 daily pay as a per diem expense reimbursement, and issued two payments to Plaintiff.  One payment constituted the expense reimbursement of $163.00 and the other payment reflected the difference of $12.00.  Eberl's did not consider the reimbursement payments in determining the amount of wages to withhold for federal tax, FICA, or Social Security purposes and the payments did not appear on Plaintiff's W2.  The $12.00 payments were considered for wage, FICA, and Social Security withholdings and appeared on Plaintiff's W2.  For each week Plaintiff elected to participate in the program, Eberl's paid her $1,141.00 in

---

employee of Eberl's from 2011 through 2012.  [#18 at ¶ 26].  Furthermore, the date on the employment contract Plaintiff signed with Eberl's is July 9, 2012.  [#62-2 at 8].  Finally, Defendant claims she worked from July 3, 2012 through September 15, 2012 during one deployment, and from November 4, 2012 through December 29, 2012 during her second and last deployment.  [#62 at 14].

per diem expenses and $84.00 in taxable wages.  [#47 at 7, ¶ 6].  According to Plaintiff, because she worked on average 84 hours a week, she received $1 in taxable wages for every hour of work during the weeks she participated in the per diem program.  Plaintiff claims Eberl's encouraged participation in the per diem program and reminded assistants to select the program at the beginning of each pay period.  [#47 at 173].

Eberl's employed 261 rope and harness assistants between February 2011 and the filing of this lawsuit in February 2014.  [Defendant's Supplemental Response to Interrogatory No. 7, #47 at 156].  The daily wage available to these assistants ranged from $175.00 to $400.00.  In this three-year period, 58 assistants received a daily wage higher than $175.00.  [Defendant's Supplemental Response to Interrogatory No. 9, #47 at 157].  In support of her Motion for Conditional Certification, Plaintiff submitted the declarations of two additional rope and harness assistants who attested to working approximately 84 hours per week.  [Declaration of Evgeniy Raygorodskiy, #47 at 18; Declaration of Konstantin Podolskiy, #47 at 21].  These individuals further attested that they were paid $175.00 per day and frequently participated in the per diem program.  [#47 at 18, ¶ 3; #47 at 21, ¶ 4].

## ANALYSIS

Plaintiff claims that Eberl's per diem program is a centralized common practice and policy of the company that uniformly impacted the putative class and caused the rope and harness assistants to receive compensation equaling less than the applicable minimum wage for all hours worked.  Plaintiff further contends that Eberl's company-wide policy of not paying overtime to rope and harness assistants violates the FLSA provision regarding overtime compensation.

The FLSA requires employers such as Eberl's to pay its employees not less than $7.25 an hour. 29 U.S.C. § 206(a)(1). The FLSA also requires that employers such as Eberl's pay non-exempt employees overtime compensation for time worked in excess of forty hours in one work week. 29 U.S.C. § 207(a). The minimum rate of overtime compensation must equal one and one-half times the employee's hourly rate. *Id.* at 207(a)(1).

Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of minimum wage and overtime provisions. It provides in part:

> An action to recover the liability [for unpaid overtime compensation, retaliation and liquidated damages] may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b). Plaintiffs who wish to participate in a FLSA collective action must opt in to the action. *See id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). *See also In re American Family Mutual Insurance Co. Overtime Pay Litigation*, 638 F.Supp.2d 1290, 1298 (D. Colo. 2009).

In *Thiessen v. General Electric Capital Corp.*, the Tenth Circuit approved a two-step process for determining whether putative class members are similarly situated to the named plaintiff. 267 F.3d 1095, 1105 (10th Cir. 2001), *cert. denied* 536 U.S. 934 (2002). At the initial "notice stage," the trial court determines whether the plaintiff has made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. The court may rely on the allegations of the complaint and any supporting affidavits filed by the plaintiff. *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004). *See also Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325 (D. Colo.

Apr. 21, 2012).  The standard for conditional certification is a lenient one, which "typically results in class certification," allowing notice to be sent to the putative class members and discovery to be undertaken.  *Brown*, 222 F.R.D. at 679.

During the second stage, after discovery has concluded and often prompted by a motion to decertify, the court applies a stricter standard in determining whether the action should continue as a collective action.  In particular, the court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made [any required filings] before instituting suit."  *Thiessen*, 267 F.3d at 1103 (citing *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997)).

## I.     Conditional Certification of a Collective Action

Courts in this jurisdiction routinely allow conditional certification in FLSA actions.  *See, e.g., Gordineer v. Rocky Mountain Offender Mgmt. Sys., No.* 12 Civ. 1212, 2013 WL 179327, at *3 (D. Colo. Jan. 17, 2013).  Conditional certification has been denied only where the complaint was wholly conclusory in nature, the supporting affidavit relied on hearsay from unidentified sources, and the nature of the violation was rendered ambiguous by the particular circumstances of the only named plaintiff.  *See Saarela v. Union Colony Protective Servs., Inc.*, No. 13-cv-01637-MSK-MJW, 2014 WL 3408771 (D. Colo. July 14, 2014) (dismissing motion for conditional certification without prejudice and instructing the plaintiff he could renew his request upon a more substantial showing that the defendant company's alleged failure to pay overtime to plaintiff was indicative of a policy that applied equally to other similarly-situated employees). The Tenth Circuit has cautioned the trial court to avoid focusing on merits of the underlying

class action in making class certification decisions. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988).

Plaintiff alleges in her Brief in support of her Motion for Conditional Certification that she and other rope and harness assistants held the same duties, routinely participated in the per diem program, routinely worked twelve-hour days and seven-day weeks, and that the per diem reimbursement equaled $163 per day. [#46]. Plaintiff submitted a declaration attesting to these allegations along with the declarations of two fellow rope and harness assistants, one of whom filed his Notice of Consent to Join on March 5, 2015. [#47 at 18, 21; #9]. Finally, Plaintiff submitted the deposition transcript of Jason Wilson, Eberl's corporate representative, to support her allegations that rope and harness assistants participated frequently in the per diem program, reported working seven days a week, and did not receive overtime compensation. [#47 at 90, 59:1-12; #47 at 68, 37:4-7; #47 at 73, 42:11-15]. Mr. Wilson was unaware of any assistant having misrepresented the number of days he or she worked. [#47 at 70, 39:8-18].

Defendant argues that rope and harness assistants are not similarly situated because they work varying hours, are paid at varying rates, and perform a range of duties all dependent on the requests of the claims adjustor for whom they work. Defendant asserts that Plaintiff's deposition testimony contradicts her allegation that she worked 84-hour weeks and demonstrates she knows of no assistants other than Mr. Podolskiy who are similarly situated to her. Defendant further claims that Mr. Raygorodskiy's Declaration is false. Finally, Defendant contends that rope and harness assistants' expenses do not correlate to the per diem they received, and many rope and harness assistants from the time at issue are subject to an arbitration clause.

The Motion for Conditional Certification presents a close question. Ultimately, I

recommend granting the Motion because I find that Plaintiff has satisfied her light burden of showing the purported class was subject to "a single decision, policy or plan." *Thiessen*, 267 F.3d at 1102.  *See also Myers v. Hertz Corp.,* 624 F.3d 532, 555 (2nd Cir. 2010) ("The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist.") (citing *Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562, 1567 (11th Cir. 1991) (internal quotation marks omitted).  Furthermore, I decline to consider second-stage factors because the court bifurcated discovery into two phases and merits discovery has not begun.  *See Cannon v. Time Warner NY Cable LLC*, 2014 WL 4401313, at *6 (D. Colo. Sept. 5, 2014) (rejecting defendant's proposed application of second stage factors in determining a motion for conditional certification where only pre-certification discovery had taken place) *report and recommendation adopted as modified,* 2014 WL 4980383 (D. Colo. Oct. 6, 2014).

Defendant acknowledges that of the 261 assistants who worked between February 4, 2011 and March 1, 2014, 219 elected to participate in the per diem program at one point or another.  [#62-5 at ¶ 5].  Defendant also concedes the assistants herein at issue executed identical contracts.  [#62 at 10].  Eberl's claims the assistants' duties varied because they were set by the adjustor: "During each assignment Employee shall diligently and competently perform to the best of his/her ability such appropriate tasks as may be assigned from time to time by his/her Lead Adjustor."  ["Temporary Employee Agreement – R&H Assistant," #62-2 at 2, § 3(a)(ii)].  However, the contract enumerates multiple tasks that the assistant should perform and may not perform, thereby limiting the discretion of the adjustor in assigning duties.  [*Id.* at § 3(a)(ii)-(iii)].

Defendant claims that Plaintiff "repeatedly acknowledged that her discovery responses are inaccurate and need to be corrected with regard to the hours she worked." [#62 at 16-17]. However, while Plaintiff testified during her deposition that her responses should be revised to state that she did not work during her off days and she worked less during rainy days, she affirmed that she otherwise worked twelve hours per day and sometimes longer. [Deposition of Dina Abdulina, #62-10 at 30, TR:132:22-25, 133:18-134:1]. Defendant further claims that Plaintiff could not "testify as to any other similarly situated [assistant]," and "*assumes* that all [assistants] worked as hard or as much as she did." [#62 at 15]. Plaintiff, whose first language is Russian, testified that although she did not work with other rope and harness assistants, she felt she could assume that they worked as often as she because she "saw a couple people [who] did the same work as [her]." [#62-10 at 17, 71:15-18]. Mr. Raygorodskiy attests that he worked an average of twelve hours a day, seven days a week and that he participated in the per diem program. [#47 at 18, ¶¶ 3, 4]. Defendant submitted the declaration of Robert Purvis, the claims adjustor for whom Mr. Raygorodskiy worked, in which Mr. Purvis attests that Mr. Raygorodskiy served as an assistant an average of only 40 hours a week. [Declaration of Robert Purvis, #62-12 at ¶¶ 4, 5]. Mary C. Dalla Betta, Eberl's Chief Financial Officer, attests that she reviewed Eberl's pay records for Mr. Raygorodskiy and determined that he did not receive per diem during his time of employment as an assistant. [Declaration of Mary C. Dalla Betta, #62-5 at ¶ 11]. However, in considering whether a single policy existed for the purposes of the instant Motion, the court does not weigh evidence or resolve factual disputes. *See Folger v. Medicalodges, Inc.*, No. 13-1203-MLB, 2014 WL 2885363, at *3 (D. Kan. June 25, 2014). *Cf. Luksza v. TJX Companies,* No. 2:11–cv–01 359–JCM–GWF, 2012 WL 3277049, at *11 (D. Nev. Aug. 8, 2012)

(refusing to grant conditional certification where the plaintiffs' deposition testimony contradicted their claims).

Finally, Eberl's claims that assistants "sought and received per diem but did not have expenses comparable to their per diem" [#62 at 19]; and that 92 of the 261 assistants who worked for Eberl's during the time in question eventually became adjustors and executed an employment contract whereby they agreed to resolve any dispute "relating to or arising from contractual or statutory compensation paid or payable by [Defendant] to Employee pursuant to this Agreement, or any prior agreement between the Parties," through binding arbitration. [#62 at 20]. Defendants argue the individual circumstances regarding assistants' living expenses and whether they are subject to an arbitration agreement further complicates finding that the purported class is similarly situated. That very well might be, but these types of arguments are more appropriately raised at the second stage of the certification analysis. *See Thiessen*, 267 F.3d at 1103 (holding that the court should wait until the "second stage" of analysis to consider "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations…).

Based on the foregoing, this court finds that Plaintiff has alleged sufficient facts to demonstrate that other rope and harness assistants were subject to and participated in Eberl's per diem program between February 2011 and February 2014, that other rope and harness assistants reported working seven days per week during the time in question, and that Eberl's did not provide overtime compensation for its rope and harness assistants. At the second stage, the court will determine whether the plaintiffs who have opted in are, in fact, "similarly situated" to the

named Plaintiff, and if it finds they are not, may de-certify the action.  *See Myers*, 642 F.3d at 555.

## II.     Plaintiff's Motion to Toll

In her Motion to Toll, Plaintiff urges the court to toll the applicable statute of limitations until 60 or 90 days after the potential collective action members receive the Notice of Collective Action.  [#67 at 6].  Defendant objects to such relief, arguing, *inter alia*, that any prejudice to opt-in plaintiffs has resulted from the unilateral delay by Ms. Abdulina to file her Motion for Conditional Certification.  [#71].  The application of the doctrine of equitable tolling lies within the court's sound discretion.  *See Stransky v. HealthONE of Denver, Inc.*, 868 F.Supp. 2d 1178, 1181 (D. Colo. 2012).

Courts have applied equitable tolling in FLSA cases when justice so requires, plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time.  *Young v. Dollar Tree Stores, Inc.*, No. 11-cv-1840-REB-MJW, 2013 WL 1223613, at *2 (D. Colo. Mar. 25, 2013).  The Motion to Toll focuses on the propriety of equitable tolling, but fails to identify any specific facts that support the application of the doctrine to this action. Indeed, Ms. Abdulina does not argue that Eberl's engaged in any wrongful conduct that deceived, misled, or lulled her into inaction, or that she met with any extraordinary circumstances that made it impossible for her to exercise her rights under the FLSA.  [#67].

In her Reply, she states for the first time that extraordinary circumstances interfered with her pursuit of conditional certification and necessitated the two requests for an extension of the motion deadline.  [#72 at 1-2].  The first request occurred when her vacation in Israel was

prolonged due to the outbreak of war between Israel and Hamas and she was unable to return to

the United States or adequately communicate with her attorneys for a period of time.  The second

request occurred four months after the first on the basis that the deposition transcript for

Defendant's corporate representative was not yet available.   As in *Young*, "the underlying

premise" of Plaintiff's position is the opt-in plaintiffs could not know about the facts that are the

basis of this FLSA claim until they receive notice of a collective action.  2013 WL 1223613, at

*2.   However, potential opt-in plaintiffs are "presumed to be aware of the facts and

circumstances" of their employment with Eberl's, and it is these facts and circumstances that

would form the basis of potential opt-in plaintiffs' FLSA claims against Defendant.  *Id.*  Their

claims accrue when they gain knowledge of these facts, in other words during their employment,

and the circumstances Plaintiff presents as preventing her from filing an earlier motion for

certification have no impact on that timeline.  Accordingly, I find that Plaintiff has failed to carry

her burden, and recommend that Ms. Abdulina's Motion to Toll be DENIED.

**III.    Notice of Collective Action Lawsuit**

        In light of the court's conclusion that conditional certification of this FLSA collective

action is appropriate, Plaintiff may disseminate notice and consent forms to potential class

members.  *Hoffman La-Roche, Inc. v. Sperling* , 493 U.S. 165, 170 (1989).  Under the FLSA, the

court must ensure that the notice to potential opt-in plaintiffs is fair and accurate.   *See id.*;

*Avendano v. Averus, Inc.*, No. 14-cv-01614-CMA-MJW, 2015 WL 1529354, at *10 (D. Colo.

2015).  Defendant proposes that the court appoint a Third Party Administrator to facilitate the

notice and asserts a number of objections to Plaintiffs' Proposed Notice of Collective Action.

[#62 at 32-34].  The court will take each of these in turn, and includes a recommended Notice of

Collective Action.[2]   In addition, because the Parties will have an opportunity to address any objections to the recommended Notice with District Judge Moore, the court declines to hold argument with respect to the Notice of Collective Action.

*Third Party Administrator*.  Defendant argues that a Third Party Administrator should facilitate the opt-in process, because the use of such an Administrator "will ensure that the process proceeds smoothly, without delay, and without requiring the Court's attention to address any disputes about the issuance of the notice or the collection and filing of any consents of opt-in plaintiffs."  [#62 at 33].  Ms. Abdulina opposes the use of a Third Party Administrator to facilitate notice.  [#66].  The record before the court does not support the need for a Third Party Administrator, and contrary to Defendant's suggestion, the use of an Administrator does not alleviate the court's duty to ensure that the Notice is fair and accurate. Therefore, this court declines to require the Parties to utilize a Third Party Administrator at this time.

*Payment of Costs*.  Defendant argues that the Notice should also include a provision that alerts opt-in plaintiffs that they may be required to pay costs if Defendant is successful.  [#62 at 32].  Plaintiff argues that such a provision is not appropriate, would have a chilling effect, and would be more confusing than elucidating. [#66 at 7-8].  The court agrees, and will not require a statement of the payment of costs in the Notice.

*Discovery*.  Currently, Plaintiff's proposed Notice makes no mention of any participation in discovery by any opt-in plaintiff, and Defendant argues that opt-in plaintiffs should be notified

---

[2] While Defendant suggests that the court should simply adopt a Notice of Collective Action that mirrors the one entered in *Cannon*, 2014 WL 4980383, the Parties in that case did not litigate the substance of the Notice, but rather, the procedure by which it would be disseminated.  [Case No. 13-cv-2521, #104, at 14-16].  I find other Notices of Collective Action issued by the District Court instructive, but am mindful that the court should generally not alter the proposed notice unless necessary.  *Avendano*, 2015 WL 1529354, at *10 (*citing Pizza Hut*, 2012 WL 1414325).

that they "may be required to submit written discovery, be deposed, and participate at trial, including possibility that they would be required to travel to Denver."  Plaintiff's counsel argues that those details are best left to verbal discussions between the potential opt-in plaintiff and counsel.  [#66 at 7-8].  The court disagrees and finds that the Notice should be modified to explain to potential opt-in plaintiffs their discovery obligations, including the possibility of travel to Denver.

*Fee Arrangement.*  Defendant seeks an explanation of the terms of the fee arrangement in the Notice itself, citing to *May v. E & J Well Serv., Inc*., No. 14-cv-00121-RBJ, 2014 WL 2922655, at *2 (D. Colo. June 27, 2014).  Plaintiff objects, arguing that "[o]nce a party elects to opt-in, he or she will receive a contract from Plaintiff's firm fully explaining the payment of attorney's fees."  [#66 at 8].

The court is concerned that a notice that has no indication of the fee arrangement at all would not meet the requirements of a fair and accurate notice.  The court has not passed (nor does it wish to pass) on the engagement letter that may be entered between Plaintiff's counsel and any opt-in plaintiffs.  Nor can the court effectively monitor what information is provided by Plaintiff's counsel over the phone.  [*See* #45 at ¶ 4].  Indeed, in *May*, the court explicitly rejected any attempt by Plaintiff to simply direct potential opt-in plaintiffs to call Plaintiff's counsel for information.  *May*, 2014 WL 2922655, at *2 n. 3.  Even in *May*, however, the court did not require the Notice to include specific terms of the fee arrangement.  Therefore, I find that Paragraph 4 of the Notice of Collective Action addressing representation should be replaced, with recommended language reflected below.

*Representative Status*.  Defendant seeks language to identify Ms. Abdulina as the

representative plaintiff designated to make decisions in the case. [#62 at 43]. Plaintiff does not object. [#66 at 8]. Therefore, the court recommends that the language be added to Paragraph 3. [#45 at 3].

*Tax Implications.* Defendant argues that the language of the notice should include language that "if they recover any settlement or are awarded damages in this case, opt-in plaintiffs may be required to amend their tax returns to account for the reallocation of wages and expenses." [#62 at 34]. Given the specific nature of tax advice, and the inability for the Notice to precisely address the tax implications for any given individual, the court declines to order that any statement regarding tax implications be included in the Notice.

*Entitlement to Recovery*. While Defendant does not address Plaintiff's statements regarding an opt-in plaintiff's entitlement to recovery after a settlement or verdict, the court also finds that the statement related to an opt-in plaintiff's recovery must be modified. Currently, the proposed Notice states that "If the plaintiff wins or settles the case, you will receive your fair share of the recovery collected." Such a statement suggests to opt-in plaintiffs that they will recover what they individually deem to be their "fair share," and is too subjective and potentially misleading, given the fact that various factors could affect a collective action member's recovery, including but not limited to the claims process or the statute of limitations.

Accordingly, this court respectfully RECOMMENDS that:

(1)     Plaintiff's Motion for Conditional Certification [#44] be **GRANTED**, and Plaintiff's Proposed Notice of Collective Action APPROVED, subject to the amendments as reflected in the Notice of Collective Action attached below;

(2)     Plaintiff's Motion for Class Certification [#43] be **DENIED** as moot;

(3)     Plaintiff's Motion to Toll the Statute of Limitations [#67] be **DENIED**; and

(4)     The Motions be DENIED as to all other matters, the Parties shall each bear their

own fees and costs incurred in the filing of the Motions discussed herein.[3]

DATED: April 27, 2015                              BY THE COURT:

                                                   s/Nina Y. Wang_____
                                                   United States Magistrate Judge

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

**ATTACHMENT –RECOMMENDED NOTICE OF COLLECTIVE ACTION**

**NOTICE OF COLLECTIVE ACTION TO**
**CURRENT AND FORMER ROPE AND HARNESS ASSISTANTS a/k/a "GROUNDS"**
**EMPLOYED BY EBERL'S TEMPORARY SERVICES INC.**

TO: Rope and Harness Assistants a/k/a "Grounds" employed by Eberl's Temporary Services, Inc.

**1.      Why Am I Getting This Notice?**

The U.S. District Court for Colorado has authorized this notice to be distributed to all Rope and Harness Assistants who currently work or have worked for Eberl's Temporary Services, Inc. (hereafter referred to as "Eberl's").  The period covered by this claim is any time from February 4, 2011  to the present. A lawsuit is pending in the U.S. District Court. You have a right to join in this lawsuit if you choose.

**2.      What Is This Lawsuit About?**

Dina Abdulina, the person who brought the lawsuit (the plaintiff) claims that Eberl's permitted and required Grounds to work more than 40 hours per week resulting in unpaid overtime. The plaintiff also alleges that Eberl's failed to pay minimum wage to Grounds in weeks in which the Grounds were paid under the per diem option.

Eberl's denies plaintiff's allegations or that plaintiff or any of the other Grounds is entitled to the relief sought. The Court, however, has taken no position on who is right or wrong in this Lawsuit.

**3.      What Are My Options?**
You can either (1) make a claim for additional overtime wages by joining in this existing lawsuit, or (2) do nothing. To join this lawsuit, submit the attached Notice of Consent. If you submit a Notice of Consent, you will be part of the case.

**4.      What Does it Mean If I Join:**

If you choose to join this Lawsuit, you will be bound by the judgment of the Court on all issues in this Lawsuit, whether favorable or unfavorable to you. The Class Members who join the lawsuit designate the named plaintiff, Ms. Abdulina, as their agent to make decisions in the case about the courts of the litigation, and subject to approval by the court, settlement.

If you choose to join this lawsuit, you may be required to respond to written requests for information and you may be required to produce documents for use in the lawsuit.  You may be required to provide sworn testimony under oath at depositions, hearings, or trial, and you may be required to travel to Denver, Colorado to do so.

To make a claim for additional wages in this case, your Notice of Consent must be postmarked by [60 days after the court's ruling on conditional certification].

If you elect not to join in this lawsuit, do nothing and you will not be part of this case. If you do nothing, you will not be affected by any judgment, whether favorable or unfavorable. You will also not receive any money from this case, even if the plaintiff wins.

**5.      Do I Need A Lawyer?**

If you choose to join the lawsuit, you may (1) represent yourself, (2) hire a lawyer of your choice, at your expense, or (3) hire The Ross Law Firm, Ross Law Group, 1104 San Antonio Street, Austin, TX 78701.   You can get more information by calling the plaintiff's attorneys. The plaintiff's attorney is Charles Scalise. He can be reached at 512-474-7677 or 1-800-634-8042.

The Ross Law Firm will provide representation on a contingent fee basis, which means that your attorneys' fees and court costs will be paid from amounts collected by settlement or judgment and will be subject to approval by the court.

**6.      Can Anyone Retaliate Against Me?**

It is a violation of federal law for anyone, including anyone at Eberl's, to retaliate against you for filing a claim to recover wages potentially owed to you or for declining to do so.